**Fred F. Walz, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.**

## Gen. No. 28,480.

1. MASTER AND SERVANT—*when incomplete trestle structure not connected with interstate commerce.* A retaining wall which is designed to form a part of a concrete track elevation structure to carry tracks used in interstate commerce is shown not to have reached such stage of completion as to constitute it an instrumentality of interstate commerce within the meaning of the Federal Employers' Liability Act at the time of plaintiff's injury where the undisputed evidence shows that the work had progressed only to the construction of wooden forms into which the concrete and steel reinforcing bars were to be placed and no filling had been placed between the retaining wall and adjacent tracks, the wooden forms being merely preliminary.

2. MASTER AND SERVANT—*when work not connected with repair or maintenance of interstate commerce instrumentality.* A work-

man who was injured by the breaking of a railing used in connection with the construction of a retaining wall designed to form a part of a concrete track elevation structure was not engaged in work connected with the repair or maintenance of interstate commerce instrumentalities within the meaning of the Federal Employers' Liability Act where the retaining wall had not reached a stage of completion sufficient to bring it within the act and was being constructed independently of the retaining wall and trestle on which adjacent tracks were carried and had not been connected up with the general system of interstate tracks at the place in question.

3. MASTER AND SERVANT—*when servant not engaged in interstate commerce.* The mere fact that plaintiff was engaged in unloading steel reinforcing bars to be used in building a concrete retaining wall which was to form part of a structure to carry interstate tracks from a car which stood on an interstate track and in piling such bars in such track to facilitate the work of building the wall did not constitute interstate commerce within the meaning of the Federal Employers' Liability Act where the use of such track was merely incidental to the work of building the wall and was not for the purpose of repairing the track or to facilitate interstate commerce or in any way connected therewith.

4. MASTER AND SERVANT—*when question whether injured servant engaged in interstate commerce is for court.* It was error to submit the question whether plaintiff was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act to the jury in a special interrogatory where the evidence on the question was undisputed and such that only one reasonable conclusion could be drawn therefrom.

5. APPEAL AND ERROR—*when finding reversible as against manifest weight of evidence.* A finding of the jury in answer to a special interrogatory that a servant was engaged in interstate commerce when injured is against the manifest weight of the evidence which shows without dispute that he was injured while engaged in unloading steel reinforcing bars to be used in building a retaining wall forming part of a track elevation structure which was not in itself an instrument of interstate commerce and that his work was in no way connected with or designed to facilitate interstate commerce.

6. SAVING QUESTIONS FOR REVIEW—*waiver of objections to sufficiency of motion for new trial.* An objection that a motion for new trial was not in writing and did not specifically state the grounds of the motion is waived by failure to move for a rule on the moving party to put the motion in writing and specify the grounds, and on appeal the moving party may assign as error any error which may

appear in the record, it appearing therefrom that a motion for new trial was made.

7. APPEAL AND ERROR—*when objection to finding sufficiently assigned as error.* An objection that the court erroneously submitted the question whether plaintiff was engaged in interstate commerce at the time of his injury to the jury on evidence which showed as a matter of law that he was not so engaged is sufficiently assigned by assignments that the court erred in not holding as a matter of law that plaintiff was not so engaged, that the evidence fails to show that he was so engaged and that the court erred in refusing to grant a new trial because of the erroneous and prejudicial answer given by the jury to the special interrogatory submitting the question to it.

Appeal by defendant from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1923. Reversed. Opinion filed March 10, 1924. *Certiorari* denied by Supreme Court (making opinion final).

C. S. JEFFERSON and M. L. BLUHN, for appellant; O. W. DYNES, of counsel.

CHARLES P. MOLTHROP, for appellee; WARREN PEASE and GEORGE E. Q. JOHNSON, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the defendant, the Chicago, Milwaukee & St. Paul Railway Company, from a judgment in the superior court of Cook county in the sum of $4,800, in favor of the plaintiff, Walz, for injuries alleged to have been received by Walz through the negligence of the defendant. The action is brought under the Federal Employers' Liability Act.

The only questions raised and argued by counsel for the defendant as grounds for reversal arise on the evidence.

Counsel for the defendant have correctly stated that the three principal questions relating to the evidence are as follows: First, whether the plaintiff was engaged in the work of interstate commerce at the time

that he was injured; second, whether the defendant was guilty of negligence; and third, the nature and extent of the plaintiff's injuries.

As we are of the opinion that the plaintiff was not engaged in the work of interstate commerce at the time that he was injured, and, therefore, cannot maintain an action under the Federal Employers' Liability Act, it will be necessary to discuss only the first question, and it will not be necessary to state or consider the evidence relating to the other two questions.

The evidence in regard to the question whether the plaintiff was engaged in the work of interstate commerce at the time of the accident is not in dispute. All of the material facts necessary to the decision of the question were developed by the testimony of the witnesses for the plaintiff. The only fact which was controverted was whether the third track, which was the track on which the accident occurred, was used for interstate commerce at the time of the accident. In our view that issue is an immaterial one.

On the trial it was agreed that the defendant was an interstate and intrastate carrier, and that the branch road on which the accident happened was a part of the general system of the defendant. The tracks of the defendant ran in a northerly direction. The accident occurred in the City of Chicago near the intersection of the tracks of the defendant with Jarvis avenue. At certain points the tracks of the defendant were being elevated and the work of elevation required work at or near Jarvis avenue. In connection with the elevation of the tracks it was necessary to construct retaining walls. Preliminary to the construction of the retaining walls carpenters build a wooden form into which concrete is to be poured later. Before the concrete is poured into the form, steel rods, called "reinforcement bars or irons," are placed in the form. Three tracks of the defendant extended past Jarvis avenue. The east retaining wall had been built and the two easterly tracks had been elevated.

The west retaining wall was being built preparatory to laying two additional tracks on the same elevation as the two easterly tracks. The wooden form for the west retaining wall had been practically completed, but the steel rods and concrete had not been put into the form. The distance from the third track to the west retaining wall was 16 or 17 feet. The third track was supported by trestle work and piles. Along the side of the third track there was a wooden walk about 2½ feet wide, with a bannister or railing about 3 or 3½ feet high. At the time of the accident a carload of steel rods, which were to be placed in the wooden form, was on the third track. The plaintiff was assisting in unloading the carload of steel rods. Two or three of the men were in the car handing the rods to other men who placed the rods between the rails of the third track and on the trestle near the rails, at convenient and accessible places from which the rods could be moved when needed for reinforcing the concrete in the wooden form of the west retaining wall. Some of the rods were bent, and had to be laid on the track with care so as not to interfere with the operation of trains. It was necessary to lay all of the rods in such a way that if any trains ran on the track the engine and cars could pass over the rods without touching the rods.

The plaintiff was one of the men who were receiving the rods from the car, and who were laying the rods in the manner described. At the time the plaintiff was injured he had carried some of the rods from the car and had laid them between the rails on the third track. After he laid down the rods he stepped back to let a man pass who was also carrying some of the rods. The railing of the platform was immediately behind the plaintiff, and as he stepped back to let the man pass the railing gave way and the plaintiff fell and was injured.

The contention of counsel for the plaintiff is that

the plaintiff is entitled to recover under the Federal Employers' Liability Act, on either or both of the following propositions:

"First: If the third track was, as claimed, an instrumentality of interstate commerce—that is, being actually used in such transportation—then in unloading the gondola and placing the rods on and about that track the plaintiff's work was so closely related to such commerce as to be a part of it and he could recover under that theory.

"Second: If the general system of tracks were being used as interstate highways and plaintiff's work was connected with the maintenance and repair or in completing the structure to sustain such tracks, he is engaged in such commerce."

Counsel for the defendant maintain that "the third track was not an instrumentality of interstate commerce at the time of the accident"; that even if it was, the "plaintiff's work was not so closely related to such commerce as to bring him under the federal act"; and that if any of the tracks in the defendant's system were "used in interstate commerce" that fact "could not affect in any manner" the plaintiff's status "under the federal act."

Both counsel for the plantiff and counsel for the defendant have discussed the facts in numerous cases illustrative of the rule governing the questions in controversy. As each case, however, depends largely on its own facts, and as there is nearly always a variation in the facts of the different cases, we do not deem it necessary to review all of the cases cited by counsel. Some of the cases may be considered for the purpose of analogy.

The general rule controlling the question in controversy is not in dispute. Both sides agree that the case of *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779], is the leading authority and correctly defines the rule governing the case at bar. The only difficulty that confronts us is to apply correctly the rule to the facts.

In the case of *Pedersen v. Delaware, L. & W. R. Co., supra,* the test to be applied to the facts in determining what work is to be considered as interstate commerce is stated as follows: "Was that work being done independently of the interstate commerce in which the defendant was engaged? * * * Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?" The question in controversy may be narrowed by the case of *Dickinson v. Industrial Board,* 280 Ill. 342, which holds that a carpenter employed by an interstate carrier, who is injured while engaged in building the wooden forms for concrete retaining walls which are to hold the filling material when the tracks of the carrier are elevated, is not engaged in interstate commerce. The reason that the carpenter's work did not constitute interstate commerce is thus stated by the court (pp. 344-345):

"It had no connection, even remote, with transportation. It was preliminary to the erection of a structure which might eventually form a part of the roadbed used in interstate commerce. The forms were not instrumentalities of interstate commerce, and the retaining walls, which had not yet been built, could not be such instrumentalities until the filling which they were to retain and upon which the tracks were to rest had been deposited in place. Olson's work was a matter of indifference, so far as the interstate commerce in which the plaintiffs in error were engaged was concerned, though the structure to be erected might eventually become an instrument of such commerce."

It is clear, therefore, that it should be held in the case at bar that the construction of the west retaining wall had not progressed to a stage where it could be said to constitute an instrumentality of interstate commerce. The wooden form only had been completed. Neither the concrete nor the reinforcing steel rods had been put into the form. There was no filling

between the third track and the form. On the authority of the case of *Dickinson v. Industrial Board, supra,* we are of the opinion that the form was not an instrumentality of interstate commerce, and that the west retaining wall, which had not yet been built, could not be such an instrumentality until the filling which it was to "retain and upon which the tracks were to rest had been deposited in place."

In the case of *Pedersen v. Delaware, L. & W. R. Co., supra,* it was held that work in connection with tracks, bridges, engines or cars which have not become instrumentalities in interstate commerce is not work concerning interstate commerce.

In view of the cases of *Dickinson v. Industrial Board, supra,* and *Pedersen v. Delaware, L. & W. R. Co., supra,* it cannot fairly be contended by counsel for the plaintiff that the work of the plaintiff "was connected with the maintenance and repair or in completing the structure to sustain" tracks of the defendant's general system which "were being used as interstate highways." The use of the two easterly tracks for interstate commerce was not dependent upon the construction that was in progress on the west retaining wall. The wooden form for the construction of the west retaining wall was 16 or 17 feet beyond the third or westerly track. The work of constructing the west wall was, to adopt the language of the case of *Pedersen v. Delaware, L. & W. R. Co., supra,* "being done independently of the interstate commerce" on the two easterly tracks, and the "performance" of the work on the west wall "was a matter of indifference so far as that commerce was concerned." Furthermore, as has been stated, the west retaining wall had not been completed and connected up with the general system of tracks. If the plaintiff had been working directly on the wooden form, similar to the manner in which the carpenter was working on the wooden form in the case of *Dickinson v. Industrial Board, supra,* it is obvious that such work would

not be interstate commerce. Does the fact that the plaintiff's work in the case at bar in regard to the form required him to assist in unloading a car on the third track, containing steel rods to be used in reinforcing the concrete which was to be placed in the form, constitute interstate commerce? We do not think that it does; and we are of that opinion even though it should be conceded that the third track was used for interstate commerce. The work of the plaintiff did not relate directly to the third track. The third track was only being used incidentally in order to facilitate the work of constructing the west wall. The third track was selected merely as a convenient place on which to put the reinforcing rods temporarily, while the rods were being unloaded from the car preparatory to being used in the wooden form. Putting the reinforcing rods on the third track was not for the purpose of repairing the track or facilitating interstate commerce on that track. Such work had nothing whatever to do with either the track itself or with interstate commerce on the track. The reinforcing rods were not placed on the third track in relation to any work of protecting the rails from obstructions, or of assisting in the operation of trains used in interstate commerce on that track. The only directions to the plaintiff were to place the reinforcing rods on the track in such a way as not to interfere with any trains that might pass over the track. We do not perceive the analogy suggested by counsel for the plaintiff, between the work of the plaintiff and that of a flagman whose duty it is to signal both interstate and intrastate trains. The flagman is actually engaged in facilitating the movements of trains; and as was said in the case of *Philadelphia & R. Ry. Co. v. Di Donato*, 256 U. S. 327, cited by counsel for the plaintiff (p. 331): "The service of a flagman concerns the safety of both commerces and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity

and commit it to confusing controversies.   *   *   *
Di Donato's duty had other purpose than the preven-
tion of a disaster to a particular train.   It had pur-
pose as well to the condition of the tracks and their
preservation from disorder and obstructions.''

The work of the plaintiff in the case at bar had no
direct connection with the movement of trains on the
third track.   In other words, the purpose of placing
the reinforcing rods on that track was not to prevent
''disorder and obstructions.''   The purpose was to
use the track as a temporary and convenient place for
the reinforcing rods until they could be removed and
placed in the wooden form.

Counsel for the plaintiff argue with confidence that
the case of *Kinzell v. Chicago, M. & St. P. Ry. Co.,* 250
U. S. 130 [19 N. C. C. A. 1], in which it was held that
the work of the plaintiff in that case was interstate
commerce, cannot be distinguished from the case at
bar.   We are unable to adopt the view of counsel for
the plaintiff.   We think that there is a material differ-
ence between the two cases.   In the *Kinzell* case, dur-
ing the progress of filling in earth to replace a rail-
road trestle used in interstate commerce, the earth as
dumped attained a level higher than the rails on the
trestle, and to keep the track open for traffic, as well
as to widen the embankment, the earth was spread
away by scrapers adjusted to a car attached for the
purpose to the dump train.   The court held that an
employee in charge of the car, and also engaged in
removing earth and stones from between the rails,
was employed in interstate commerce within the mean-
ing of the Federal Employers' Liability Act.   The
court said (p. 134) that the fill had clearly become
a part of the interstate railway when the employee
was injured, and that in the performance of his work
the employee was keeping the interstate track clear
and safe for interstate trains.

In the case at bar the west retaining wall had not
been completed and had not become a part of the in-

terstate railway; the plaintiff was not keeping the third track clear and safe for interstate trains, but was using the track as a place on which to deposit the reinforcing rods temporarily until the rods should be removed and put in the wooden form. Moreover, in the case of *Kinzell v. Chicago, M. & St. P. Ry. Co., supra,* the earth which the employee was spreading away by scrapers adjusted to a car was earth which had not been put into the fill temporarily to be removed subsequently, but the fill was the ultimate and permanent destination of the earth. In the case at bar the third track was not the ultimate and permanent destination of the reinforcing rods, but the wooden form for the west retaining wall was the ultimate and permanent destination of the reinforcing rods.

The situation in the case at bar would be substantially the same as the case of *Dickinson v. Industrial Board, supra,* if the carpenter who was building the wooden form in the latter case had put some of his lumber, as a matter of convenience, temporarily on a track of the railway company which was used for interstate trains. It is clear, we think, that such use of an interstate track in the illustration given could not be considered reasonably as work in connection with interstate commerce.

We are of the opinion that the plaintiff in the case at bar was not engaged in interstate commerce at the time that he was injured.

The question whether he was so engaged was submitted to the jury in a special interrogatory and the jury answered that he was. In our view the question was one of law for the court and should not have been submitted to the jury. As we have previously stated, the facts necessary to the decision of the question were not controverted. From the undisputed facts, we are of the opinion that only one reasonable conclusion may be drawn, and that, therefore, the question is one of law, not fact. *Kaminsky v. Chicago Rys. Co.,* 286 Ill. 271, 277, 278. If, however, the question

may be considered one of fact, or a mixed one of fact and law, and as having been properly submitted to the jury in the special interrogatory, we are of the opinion that the finding of the jury is manifestly against the weight of the evidence.

Counsel for the plaintiff express a serious doubt as to the right of the defendant to urge the question on appeal whether the plaintiff was engaged in interstate commerce at the time that he was injured. Counsel for the plaintiff maintain that the defendant is conclusively bound by the finding of the jury on the special interrogatory, for the reason that the finding of the jury was not specifically objected to by the defendant on the motion for a new trial; that no written motion for a new trial was filed by the defendant; and that the assignment of errors of the defendant contains no specific objection to the finding of the jury. In support of their contention counsel for the plaintiff cite the case of *Brimie v. Belden Mfg. Co.*, 287 Ill. 11, which holds that where a party submits a special interrogatory on a question of fact, the party is conclusively bound by the special finding of the jury unless the party has raised the question on the motion for a new trial, or has assigned error on the question in the assignment of errors.

In the case at bar the record shows that a motion for a new trial was made, but the record does not show that the motion was in writing or that the grounds of the motion were specifically stated. In such case the plaintiff had the right to move for a rule on the defendant to specify the grounds of the motion for a new trial. *Ottawa, O. & F. River Val. R. Co. v. McMath*, 91 Ill. 104, 111; *Metropolitan West Side El. R. Co. v. White*, 166 Ill. 375, 378. The plaintiff did not make such a motion and, therefore, he cannot now object on appeal that the motion for a new trial was not in writing or that the grounds were not specifically stated. *Chicago Union Traction Co. v. City*

*of Chicago,* 209 Ill. 444, 445. In this state of the record the defendant is entitled to assign as error any error that may appear in the record. *Yarber v. Chicago & A. Ry. Co.,* 235 Ill. 589, 602; *People v. Melnick,* 263 Ill. 24, 31.

In regard to the special interrogatory, the assignment of errors contains the following objections: "27. The court erred in refusing to hold as a matter of law that plaintiff was not engaged in interstate commerce or in work so closely connected therewith as to be a part thereof, at the time he was injured." "30. The evidence fails to show that plaintiff was engaged in interstate commerce at the time of the accident in question, and therefore plaintiff is not entitled to recover under the Federal Employers' Liability Act." "34. The court erred in refusing to grant a new trial because of the erroneous and prejudicial answer returned by the jury to the special interrogatory submitted to the jury by the court." We think that the above assignments of error are sufficient to raise the question on appeal whether the plaintiff was engaged in interstate commerce at the time that he was injured.

For the reasons stated the judgment of the trial court is reversed; and since we have held that the action cannot be maintained under the Federal Employers' Liability Act, the cause will not be remanded.

*Judgment reversed.*

MATCHETT, P. J., and McSURELY, J., concur.